**IN THE UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF MARYLAND**

UNITED STATES OF AMERICA,     )
                                        )
       Plaintiff,          )
                                        )
      v.                   )     16-CV-1997
                                        )
PETER AND SUSAN HOROWITZ,    )
                                        )
       Defendants.     )
_____)

**DEFENDANTS' AMENDED REPLY IN SUPPORT OF THEIR MOTION FOR**

**SUMMARY JUDGMENT  (REPLACING DOCKET #72)**

# TABLE OF CONTENTS

I.    Introduction ........................................................................................................1

    **1.**    The IRS reversed the willful FBAR penalties assessments in October 2014 and those penalties were reassessed against Defendants on May 20, 2016, after the statute of limitations for assessment had expired. ....................................1

        a.    Each material fact argued in Defendants' Motion for Summary Judgment remains and was not disputed by Plaintiff in its Response to Defendants' Motion for Summary Judgment. ................................................. 1

        b.    The cases cited by Plaintiff do not support Plaintiff's Position. .............. 6

        c.    There was no compromise such that 31 USC 3711(a)(2) required Department of Justice approval...........................................................12

        d.    Willful FBAR penalties are capped at $100,000.........................................14

    **2.**    Defendants Motion for Summary Judgment should be granted because Defendants did not willfully fail to file FBARs for the 2007 and 2008 years and Plaintiff raises no genuine issue of material fact. ..................................................15

II.    Conclusion as to willfulness. ........................................................................20

## I.    Introduction

Defendants, Peter Horowitz and Susan Horowitz, respectfully file this Reply in Support of their Motion for Summary Judgment.  Plaintiff does not dispute any material fact relied upon by Defendants to support their Motion for Summary Judgment regarding their argument that the statute of limitations expired prior to the reassessment of willful FBAR penalties in May, 2016. Plaintiff provides no contrary fact that if viewed in light most favorable to Plaintiff would overcome Defendants' Motion for Summary Judgment.  Further, Plaintiff's secondary argument regarding the statute of limitations issue - that the IRS improperly "compromised" a debt of the government in 2014 - is incorrect and not supported by the plain language of the statute or the recent decision in *United States v. Colliot*, 2018 WL 2271381 (W.D. Texas 2018).  Defendants' Motion for Summary Judgment should, therefore, be granted.  Lastly, Defendants' Motion for Summary Judgment establishing that the Defendants' lacked willfulness for purposes of the willful FBAR penalties should be granted.  Plaintiff provides no fact disputing Defendants' claim that they did not possess actual knowledge of the FBAR form or FBAR reporting requirements. Absent a dispute of any material fact, Defendants' motion should be granted.

1.    **The IRS reversed the willful FBAR penalties assessments in October 2014 and those penalties were reassessed against Defendants on May 20, 2016, after the statute of limitations for assessment had expired.**

In its Response, Plaintiff limits its argument to the 2014 timeframe.  Plaintiff argues that Ms. Beasley's reversal of the FBAR penalty assessments in October 2014 were either, "(1) a clerical act that can be disregarded or modified at any time or (2) an unauthorized and invalid attempt to compromise a government claim."  Pl. Resp., at 22.  Neither is correct.

a.    **Each material fact argued in Defendants' Motion for Summary Judgment remains and was not disputed by Plaintiff in its Response to Defendants' Motion for Summary Judgment.**

Each material fact relied upon by Defendants to establish that the statute of limitations expired prior to the reassessment of the willful FBAR penalties in May 2016 is not disputed by Plaintiff. The material facts relied upon by Defendants' in their Motion for Summary Judgment are repeated here along with the statements contained in Plaintiff's Response to Defendants' Motion for Summary Judgment regarding these facts, if any.

1. On June 13, 2014, Nancy Beasley—the FBAR Penalty Coordinator, Enterprise Computing Center (ECC), U.S. Treasury Department, Detroit, Michigan—assessed willful FBAR penalties for the 2007 and 2008 years against Peter Horowitz and Susan Horowitz. JE 38 at 6:13–7:5. <u>Plaintiff agrees with Defendants' assertions.</u> *See* Pl. Resp., at 21 ("IRS assessed the penalties on June 13, 2014"); and at 23 ("There is no dispute that the IRS assessed four penalties of $247,030 apiece against Defendants on June 13, 2014").

2. Ms. Beasley was the only person within the Treasury Department with that authority at that time. JE 38 at 9:17–18. <u>Plaintiff does not dispute Defendants' assertion.</u>

3. The FBAR penalty database maintained by Ms. Beasley contains pertinent information required for a penalty assessment, including the input penalty date. JE 56, 57, 58, 59. <u>Plaintiff does not dispute Defendants' assertion.</u>

4. Four separate modules were created within the database relating to the 2007 and 2008 years for Peter Horowitz and Susan Horowitz. *Ibid.* <u>Plaintiff does not dispute Defendants' assertion</u>.

5. The FBAR penalty database module for the 2007 and 2008 years identify the 2007 and 2008 years along with the name of the financial institution and "date penalty input" associated with the FBAR penalty assessment. *See* JE 56, JE 57, JE 58, and JE 59. <u>Plaintiff does not dispute Defendants' assertion.</u>

6. After the IRS examination, Peter Horowitz and Susan Horowitz protested their respective willful FBAR penalties to the IRS Office of Appeals; the appeal was assigned to IRS Appeals Officer Grayse Rodrigo, Appeals International Specialist. Stip. ¶67. <u>Plaintiff does not dispute Defendants' assertion.</u>

7. Upon receipt of the FBAR penalty cases for Peter Horowitz and Susan Horowitz, Ms. Rodrigo noticed that the Defendants had each extended the statute of limitations for assessing FBAR penalties for the 2007 and 2008 years to December 31, 2015. JE 37 at HORO_00140. <u>Plaintiff does not dispute Defendants' assertion</u>.

8. As a policy matter, IRS Appeals could review an FBAR penalty case in one of two possible postures: (i) the FBAR penalty having already been assessed by ECC or (ii) in an unassessed status where sufficient time exists on the statute of limitations to allow IRS Appeals to conduct its review before assessment. *See* IRM § 8.11.6.3., *et seq*. <u>Plaintiff does not dispute Defendants' assertion</u>.

9. While the FBAR penalties had already been assessed against Peter Horowitz and Susan Horowitz, Ms. Rodrigo determined that the case should have been in an unassessed posture for purposes of IRS Appeals review. JE 37 at HORO_00140. <u>Plaintiff does not dispute Defendants' assertion</u>.

10. On October 16, 2014, Ms. Rodrigo emailed her manager, Jennifer R. Sawyer, and to IRS Appeals FBAR Coordinator, Daisy Batman, informing them that the matter should be reviewed in Appeals as an unassessed case because both Peter Horowitz and Susan Horowitz had provided valid statute extensions. JE 37 at HORO_00140. She requested to have the FBAR penalty assessment for the 2007 and 2008 years reversed. *Ibid.* Ms. Rodrigo wrote:

*The FBAR consent to extend the statute was timely extended to 12/31/2015 on 06/04/2014.*

*Please have ECC remove the following FBAR assessments:*

*P. Horowitz Tax Year 2007 $207,030 / S. Horowitz Tax Year 2007 $207 030*
*P. Horowitz Tax Year 2008 $207,030 / S. Horowitz Tax Year 2008 $207,030*

JE 37 at HORO_00140.   <u>Plaintiff does not dispute Defendants' assertions and agrees that this email was sent</u>.  Pl. Resp., at 22.

11.  In response, on October 17, 2014, Ms. Batman emailed Ms. Beasley requesting that Ms. Beasley "remove/reverse" the willful FBAR penalties that had already been assessed against the Defendants.  JE 37 at HORO_00140.  In her email, Ms. Batman wrote:

*Hi Nancy.  We have received 2 FBAR cases in Appeals with valid statute consents for 2007 and 2008 extending the statute to 12/31/2015.  These same taxpayers were also assessed a Fbar penalty for each year.*

*Since the 2007 and 2008 statute will not expire until 12/31/2015, I believe the penalty was assessed prematurely and needs to be removed/reversed for each year. The executed statute consents are attached.*

*Please remove/reverse the assessed penalties for 2007 and 2008 for each taxpayer.  See email below for specific information on the taxpayers.  When the adjustment has been made, please let me know.*

JE 37 at HORO_00140.  <u>Plaintiff does not dispute Defendants' assertions and agrees that the email was sent.</u>  Pl. Resp., at 22.

12.  On October 24, 2014, Ms. Beasley wrote an email back to Ms. Batman confirming that she had removed/reversed the willful FBAR penalties.  JE 37 at HORO_00139.  In her email, Ms. Beasley stated: "*I have removed the penalty input date on the penalties.*" JE 38 HORO_00139 and HORO_00140.  <u>Plaintiff does not dispute Defendants' assertion or that the email was sent.  Plaintiff further admits that Ms. Beasley removed the penalty input dates</u>.  Pl. Resp. at 22 ("There is no dispute that around October 24, 2014, Ms. Beasley

'removed the penalty input dates' from the 'modules' in her database (to use Defendants' term) corresponding to the penalty assessments against the Defendants. And she certainly took this action in response to Ms. Batman's request (transmitted on behalf of Grayse Rodrigo) that she 'remove/reverse the assessed penalties' against Defendants.[1]

13.  Ms. Batman testified that she understood Ms. Beasley's email response to her to mean that the case in Appeals was now in an un-assessed status.  JE 39 at 13:7–18.  <u>Plaintiff does not dispute Ms. Batman's testimony</u>.

14.  Ms. Beasley testified on April 26, 2017, that the physical act of removing the content of the "input penalty date" fields on the FBAR penalty database reversed the willful FBAR penalties against Peter Horowitz and Susan Horowitz for the 2007 and 2008 years.  JE 38 at 28:7–9.  She was asked the following during her questioning:

> *Q.  Ms. Beasley, I'm going to ask it again, okay, because you did not respond.  Was it your – you said you removed the penalty input date. Does that mean, when you said you followed her instruction, her instruction was remove and reverse the assessed penalties for '07 and '08.  Did you remove and reverse the assessed penalties for '07 and '08?*
>
> *A:  Yes.*

JE 38 at 28:1-10.  <u>Plaintiff does not dispute Ms. Beasley's testimony</u>.

15.  In May, 2016, at the request of Ms. Batman, Ms. Beasley re-entered the FBAR penalty assessment date but did not use the contemporaneous date, May 20, 2016, rather, she entered  June 13, 2014, "I will input the original penalty input date..."  *See* a copy of the FBAR penalty database modules for the 2007 and 2008 years for Peter Horowitz and

---

[1] Plaintiff states that the penalty certification forms were not reissued after the reversal of the assessments, but provides no argument that additional certification forms were legally required for a reversal of an assessment (or for a reassessment of those penalties in 2016), as the certification itself simply confirms that, as of June 13, 2014, FBAR penalties had been assessed. These facts are not in dispute.  *See* JE 30, 31, 32, and 33, and Pl. Resp., at 26.

Susan Horowitz containing the June 13, 2014 dates at JE 56, 57, 58, and 59 and HORO 00139.  <u>Plaintiff does not dispute Defendants' assertions that the June 13, 2014 date was used rather than the contemporaneous date of May 20, 2016</u>.  Pl. Resp., at 25 ("When she re-input the original June 13, 2014 assessment date into her spreadsheet in May 2016….").

16.  Peter Horowitz and Susan Horowitz voluntarily extended the statute of limitations for assessment of each of their FBAR penalties for both the 2007 and 2008 years to December 31, 2015.  Stip. ⁋ 65; Stip. ⁋ 66.  <u>Plaintiff does not dispute Defendants' assertion.</u>

There are no material facts in dispute.  Taken together, facts 1 through 16 are sufficient for the Court to grant Defendants' Motion for Summary Judgment.  Ms. Beasley initially assessed the willful FBAR penalties against the Defendants on June 13, 2014 for the 2007 and 2008 years, she reversed those assessments by October 24, 2014, and the penalties were not reassessed until May 20, 2016, after the statute of limitations expired (December 31, 2015).

Rather than concede that the FBAR penalty assessments were reassessed out of time, and focus on whether there was statutory authority to the revere the assessment, Plaintiff argues that Ms. Beasley's actions to reverse the FBAR assessments in 2014 was a "clerical" act and one that can be "disregarded" or "modified" at any time.  Pl. Resp., at 22.  Plaintiff's contention is not correct.

### b.    The cases cited by Plaintiff do not support Plaintiff's Position.

Plaintiff's argument is not supported by the five cases it relied upon in its brief.[2]  Those cases address circumstances where the courts allowed the IRS to correct clear clerical "errors" by

---

[2] Notably, not a single case cited Plaintiff involves the assessment, reversal or reassessment of FBAR penalties arising under Title 31 of the U.S. Code.  Each of the five cases relied upon by Plaintiff are either income tax cases or payroll tax cases governed by the assessment and collection provisions of Title 26 of the U.S. Code.  Plaintiff makes no argument that the Title 26 cases it cites are applicable to Title 31.  Plaintiff also makes no argument that the policies,

IRS employees - or by its internal computer systems - for misapplying payments and tax credits related to income tax and payroll taxes.  The cases do not stand for the proposition that Ms. Beasley could assess an FBAR penalty, reverse the FBAR penalty assessment, and later declare the act of reversal should be "disregarded" without first finding that there is a need to disregard her actions, due to mistake or clear error.  The cases cited by Plaintiff are as follows.

1. *Kroyer v. United States,* 73 Ct. Cl. 591 (1932).  In *Kroyer*, the IRS assessed $75,243 for the taxpayer's 1917 tax year. *Id*. at 594.  The IRS also assessed additional taxes for the 1917 year in the amount of $66,504. *Id.* at 595.  The taxpayer posted a bond in the amount of $75,000 to cover the first tax assessment. *Ibid.* The taxpayer moved residences, and at that time, IRS collection offices in each district also changed with residency. *Ibid.* Once the taxpayer lost the first 1917 tax issue, the bond was released to pay off the first 1917 tax assessment. *Id*. at 596. However, the IRS mistakenly applied the $75,000 bond against the second tax assessment, the error caused by the change in IRS collection offices. *Ibid.*

The taxpayer then tried to claim a refund for the second assessment (since the IRS applied the bond in the amount of $75,000 against the $66,504 second tax liability, there was an overpayment).  *Ibid.*  The court did not allow the refund, finding that the IRS made a clerical error in applying the payment to the second assessment instead of the first. *Id*. at 597-598.  The court held that "the government was not bound by some action of one officer resulting from a mistake of fact which, when such action was corrected, left the whole matter in such a situation that the party complaining had received no injury and been done no injustice."  *Id*. at 599.

---

procedures, regulations or code sections governing the assessment of FBAR penalties are in anyway analogous to income tax and payroll tax assessments. For these reasons alone, the cases cited by Plaintiff should not be considered by the Court as determinative, authoritative, or persuasive.

In the case at hand, Plaintiff does not identify any error requiring correction. The undisputed facts are that Ms. Rodrigo and Ms. Batman requested that the FBAR penalties for the 2007 and 2008 years be reversed, and Ms. Beasley reversed the FBAR penalty assessments in October 2014, as Ms. Beasley testified. This act was not in error, and Plaintiff does not so argue. Further, Plaintiff points to no "error" that needed to be corrected with respect to the "amount" of the FBAR penalties that were reversed in 2014. In their respective emails, Ms. Rodrigo and Ms. Batman requested that all four FBAR penalty assessments be reversed and they listed each year and each amount corresponding to the Defendants' four FBAR penalties. Ms. Beasley reversed each and every FBAR penalty assessment in the amounts as requested by Ms. Batman, as she testified and as Plaintiff does not dispute. There is no assertion by Plaintiff that Ms. Beasley reversed an FBAR penalty assessment in the wrong amount.

*Kroyer* does not stand for the proposition that Ms. Beasley's actions in 2014 can simply be disregarded by Plaintiff. Ms. Beasley, as the U.S. Treasury's FBAR Penalty Coordinator, was the only person at the U.S. Treasury with the authority to assess FBAR penalties. She was the person who initially assessed the FBAR penalties against the Defendants and she was the person who reversed those very same assessments (and later reassessed them in 2016). The reversal came at the request of Ms. Rodrigo, IRS Appeals Officer and Appeals International Specialist, and from Ms. Batman, IRS Appeals FBAR Coordinator. There was no error made in 2014 that required a correction, and Plaintiff never identifies one. Thus, as of October 2014, the FBAR penalties for the 2007 and 2008 years were no longer assessed against Defendants, as Ms. Beasley testified. *Kroyer* does not change that outcome.

  2. *In re Becker*, 407 F.3d 89 (2d Cir. 2005). *Becker* was a payroll tax case in which tax payments were misapplied by the IRS. *Id*. at 91. The IRS determined the taxpayer to be a

"responsible person" under the payroll tax law and was liable for a trust fund recovery penalty

(a penalty equal to the amount of the unpaid payroll taxes).  *Ibid*.  The taxpayer made a payment

of $7,499.97 toward the total amount due of $182,562.49.  *Ibid*.  Instead of recording the

$7,499.97 as the amount paid by the taxpayer, the IRS recorded the full amount of the

assessment, $182,562.4, as being paid, in error.  *Id*. at 92.

    The Revenue Officer noticed the error, informed the IRS service center that the wrong

amount was credited to the taxpayer's account, informed the taxpayer that the IRS improperly

recorded the payment amount, and took steps to correct the payment application error.  *Ibid*.

The proper amount of the tax payment was posted three days after the expiration of the statute

of limitations. *Id*. at 93.  The taxpayer, meanwhile, had filed for bankruptcy, listing an

outstanding payroll tax debt of "$150,000," but ultimately challenged the underlying tax

assessment as not being timely upon reassessment. *Ibid*. The court allowed the IRS to correct its

administrative error and deemed that the correction did not violate the statute of limitations. *Id*.

at 97.

    Here, there was no error that needed to be corrected and Plaintiff does not argue there

was an error.  At the request of Ms. Rodrigo and Ms. Batman, Ms. Beasley reversed the willful

FBAR penalties assessed against Defendants.  The proper amount of the FBAR assessments

were reversed.  Thus, as of October 2014, the FBAR penalties for the 2007 and 2008 years were

no longer assessed against Defendants, as Ms. Beasley testified.  *Becker* does not change that

outcome.

    3. *Crompton-Richmond Co. v. United States*, 311 F. Supp. 1184 (S.D.N.Y. 1970).  In

*Crompton-Richmond*, a predecessor company in bankruptcy failed to pay its payroll taxes and

Crompton- Richmond Co. took over those payroll tax responsibilities.  *Id*. at 1185.  The IRS also

assessed trust fund recovery penalties against several individuals who were deemed to be "responsible persons" (which is a person found to have caused the corporation to fail to pay over the funds as required) including the third-party defendant in the case. *Ibid*. Crompton-Richmond subsequently paid the outstanding payroll tax liability. *Ibid*. The IRS recorded the corporate payment and also abated the trust fund recovery penalty that had previously been assessed against the responsible persons, as no debt remained payable to the IRS. *Ibid*.

Unbeknownst to the IRS employee who abated the trust fund recovery penalties for the individual taxpayers, Crompton-Richmond filed a refund request for the payroll taxes that it had just remitted to the IRS. According to IRS policy, the penalties assessed against the responsible person should not have been abated until the final outcome of the refund suit by the corporation. *Ibid*. The court noted that the internal IRS request for abatement "represented plain ordinary clerical or bookkeeping errors arising out of the failure of some IRS office personnel to appreciate that there was a pending refund suit." *Id*. at 1185-86. The court allowed the assessment for the trust fund recovery penalties to be re-instated. *Id.* at 1186-1187. Here, no similar error occurred and Plaintiff alleges no error. There was no misunderstanding when Ms. Beasley reversed the assessment of FBAR penalties in 2014 at the request of Ms. Batman and Plaintiff makes no such claim. The *Crompton-Richmond Co.* case does not stand for the proposition that the reversal of the FBAR assessments in 2014 by Ms. Beasley can be disregarded absent a need to correct an error. Thus, as of October 2014, the FBAR penalties for the 2007 and 2008 years were no longer assessed against Defendants, as Ms. Beasley testified. *Crompton-Richmond* does not change that outcome.

4. *U.S. v. Cook*, 2004 WL 690804 (E.D. Pa., Mar. 22, 2004). In *Cook*, the taxpayer was assessed trust fund recovery penalties for unpaid payroll taxes. *Id*. at *4. The court found that

the IRS made two transcript entry errors causing a reduction to the taxpayer's tax liability. *Id*. at *10. First, on December 6, 2002, the Revenue Officer made an error by placing the wrong "transactional code" ("Code 530") on the taxpayer's transcript of account causing a credit to the taxpayer's tax liabilities. *Ibid*. Second, on February 3, 2003, "Code 608" was automatically placed on the taxpayer's account by the IRS's computer system as a result of the IRS failing to note pending litigation, which caused an automatic computer generated credit to appear on the taxpayer's account. *Ibid*.

The court found that both code entries were "inadvertently made" by the IRS and did not have "legal effect on the assessment against the taxpayer" and could be corrected. *Ibid*. There was no similar transcript error here, and Plaintiff does not allege one occurred. Here, Ms. Beasley's actions were intentional and voluntary when she reversed the FBAR penalty assessments at the request of Ms. Batman. Thus, as of October 2014, the FBAR penalties for the 2007 and 2008 years were no longer assessed against Defendants, as Ms. Beasley testified. *Cook* does not change that outcome.

5. *Simon v. US*, 261 F.Supp.2d 567 (M.D. La. 2003). In *Simon*, the IRS assessed a trust fund recovery penalty against the defendant because the corporation failed to turn over payroll taxes. *Id*. at 569. Due to a computer error, the IRS removed the liability from the IRS records "because the program erroneously calculated that the statute of limitations for *collecting* the liability had run." *Ibid*. After discovering the computer error, the IRS reinstated the defendant's liability. *Ibid*. The issue before the court was whether the IRS could correct the computer error despite the statute of limitations for assessment expiring before the correction was made. *Ibid*. The court held the IRS could correct the computer generated error. *Ibid*.

In the case at hand, there is no computer error to correct and Plaintiff does not allege one existed. Ms. Rodrigo, Ms. Batman and Ms. Beasley each intended to reverse the FBAR penalties that had been previously assessed against the Defendants and Ms. Beasley's voluntary intentional actions in 2014 reversed the 2007 and 2008 FBAR penalty assessments, as Ms. Beasley testified. Thus, as of October 2014, the FBAR penalties for the 2007 and 2008 years were no longer assessed against Defendants and *Cook* does not change that outcome. Taken together, the cases cited by Plaintiff above do not raise a genuine issue of material fact and, therefore, the Court should grant Defendants' Motion for Summary Judgment.

### c. There was no compromise such that 31 USC 3711(a)(2) required Department of Justice approval.

Plaintiff next argues in the alternative that the term "compromise"—as used in 31 U.S.C. § 3711(a)(2)—means reducing an assessment by any amount, including a full concession on the part of the agency enforcing the claim. This argument must fail for two reasons. First, this interpretation is contrary to the plain language of the statute. Second, the regulations limit the IRS's authority to legally assess a willful FBAR penalty in any amount above $100,000, so any "compromise" or abatement of the legally assessed amount did not require approval.[3]

This Court should give no deference to Plaintiff's statutory interpretation because it fails to follow the plain meaning of the text. There is no dispute that the word "compromise" contained in section 3711(a)(2) is unambiguous. Where the language of a statute is plain and unambiguous, courts give effect to the statute as written, without engaging in statutory construction. *United States v. Locke*, 471 U.S. 84, 93 (1985). And if Congress does not provide a specific definition, courts consider dictionaries of the era in which the statute was enacted.

---

[3] Plaintiff states IRS Appeals became aware of the statutory limits for a "compromise" during the appeals process. This fact is not in dispute. Pl. Resp., at 26-27. *See* Ms. Rodrigo's testimony that such awareness may have occurred in May of 2016 (JE 41 at 26: 8-11) or as early as January 2016. JE 41 at 32:5-19.

*Director, Office of Workers' Compensation Programs, Dept. of Labor v. Greenwich Collieries*,

512 U.S. 267, 272 (1994)

Congress did not define the word "compromise" as used in the statute. The statutory

provision originated with the predecessor to section 3711, as enacted by H.R. 13651 in 1966.

Section 3(b) of the 1966 Act, provided:

> With respect to such claims of the United States that have not been referred to another agency * * * for further collection action and that do not exceed $20,000, exclusive of interest, the head of an agency * * * may <u>compromise</u> any such claim[.]

At that time, "compromise" was defined as:

> An arrangement arrived at, either in court or out of court, for settling a dispute upon what appears to the parties to be equitable terms, having regard to the uncertainty they are in regarding the facts, or the law and the facts together. *Colburn v. Groton*, 66 N.H. 151, 28 A. 95, 22 L.R.A. 763; *Isaacs v. Wishnick, 136 Minn. 317, 162 N.W. 297; Joyner v. City of Seattle, 144 Wash. 641,* 258 P. 479, 481. A settlement of differences by <u>mutual concessions</u> or an adjustment of matters in dispute <u>by mutual concessions</u>. *Forker v. Berkes*, 111 Ind.App. 92, 38 N.E.2d 296, 299; *In re Cusimano's Will*, 22 N.Y.S.2d 677, 680, 681, 174 Misc. 1068.

Blacks 4th 359 (1968) (emphasis added).

Contrary to Plaintiff's assertion, the word "compromise" involves "mutual concessions"

and excludes "unilateral" concession. [4] A mutual concession did not occur here, and Plaintiff

does not so argue ("Defendants were not even aware" of the FBAR penalty assessment reversal).

*See* P. Br., at 26. Ms. Beasley reversed the 2007 and 2008 FBAR assessments unilaterally –

---

[4] None of these cases cited by Plaintiff have bearing on the "unilateral" action to reduce debt equating to a "compromise" rather, each case involves a "mutual consent" to compromise a debt. Pl. B. at 29-30. *U.S. v Jackson*, 511 Fed App'x 200, 202 (3d. Cir. 2013) (addressing a mutually agreed abatement of income tax liabilities); *U.S. v. Baker*, 2012 WL 3612273 at *3 (M.D. Fla. Aug. 21, 2012) (involving a mutual agreement to compromise a debt by the debtor and the U.S. Attorney's Office); and *U.S. v Bloom*, 112 F3d. 200, 206 (5th Cir. 1997) (the debtor attempted an accord and satisfaction after discussions of settlement with the government).

which never could meet the definition of "mutual concession."  Thus, there was no

"compromise" giving rise to a violation of the statute under the plain meaning of that term.

Plaintiff's argument against granting summary judgment in favor of Defendants' statute

of limitations defense must fail, as Ms. Beasley did not "compromise" a debt when she

unilaterally reversed the FBAR penalty assessment in 2014.  Given the foregoing, there is no

statutory bar to Ms. Beasley's reversal of the FBAR penalties.  As of October 2014, the FBAR

penalties for the 2007 and 2008 years were no longer assessed against Defendants, as Ms.

Beasley testified, and such penalties were not reassessed until May 2016, after the expiration of

the statute of limitations (December 31, 2015).  Defendants' Motion for Summary Judgment

should be granted.

### d.    Willful FBAR penalties are capped at $100,000.

Even assuming, arguendo that the Court finds Ms. Beasley's actions in 2014 constitute a

"compromise," no approval was required under these circumstances.  Section 3711(a)(2) allows

agencies to compromise claims of the government, but this authority presumes that those claims

are valid and legal.  There is no dispute that the statute, 31 U.S.C. § 5321(a)(5), provides for a

maximum willful FBAR penalty of $100,000 or 50 percent of the balance in the unreported

account at the time of the violation, upon which the initial assessment was based here.  But the

Department of the Treasury, via notice and comment rulemaking promulgated regulations,

limited the maximum amount of willful FBAR penalties to $100,000.  *See* 31 C.F.R. § 103.57—

providing that "[f]or any willful violation committed after October 26, 1986 * * * the Secretary

may assess upon any person, a civil penalty[] * * * not to exceed the greater of the amount (not

to exceed $100,000) equal to the balance in the account at the time of the violation, or $25,000."

Amendments to Implementing Regulations under the Bank Secrecy Act, 52 Fed. Reg. 11436,

11445-46 (1987) (emphasis added).

14

Although the regulations, ($100,000), reflect an amount lower than the statutory maximum (50% of the account balance), the IRS cannot act outside of its own regulation. *See United States v. Colliot*, 2018 WL 2271381, at *3 (W.D. Texas 2018) (holding that willful FBAR penalties are <u>limited to $100,000</u> and that if the IRS wishes to assess such penalties in excess of the regulatory limit, it must first amend its own regulations). Accordingly, any amount originally assessed against Defendants here in excess of $100,000 was assessed illegally, and the Court is within its authority to abate that excess, and Defendants request the Court to so rule. With respect to any amount remaining after such abatement, which cannot legally be more than $100,000, the statute requiring Department of Justice review (31 U.S.C. § 3711(a)(2)) does not require consultation with or approval from the Department of Justice to compromise the debt. If the illegally assessed FBAR penalties (amount over $100,000) is invalidated, then Ms. Beasley's reversal of the remainder (not more than $100,000) did not require approval from DOJ before "compromising" the debt (assuming the court deems the reversal of the assessment a compromise). Therefore, even if this Court agrees with Plaintiff's definition of "compromise," the IRS was not required to seek its approval before reversing the legally assessed portions of the FBAR penalties at issue in this case. For the foregoing reasons, Defendants' Motion for Summary Judgment should be granted as the statutory provisions cited by Plaintiff are not a bar to Defendants' motion.

### 2. Defendants Motion for Summary Judgment should be granted because Defendants did not willfully fail to file FBARs for the 2007 and 2008 years and Plaintiff raises no genuine issue of material fact.

Defendants' Motion for Summary Judgment should also be granted on the grounds that Plaintiff failed to establish that the Defendants voluntarily and intentionally violated a known legal duty to file FBARs for the 2007 and 2008 years. The undisputed facts establish that

Defendants had no <u>actual</u> knowledge of the FBAR form or the FBAR filing requirements, as of June 30, 2008 and June 30, 2009, the due dates for the 2007 and 2008 FBARs.  Thus, Defendants did not willfully fail to file FBARs on those dates.  The assessments of willful FBAR penalties for the 2007 and 2008 years were improper and summary judgment should be granted to Defendants precluding enforcement of those penalties.

Plaintiff, in its Response to Defendants' Motion for Summary Judgment, never alleges Peter Horowitz or Susan Horowitz possessed actual knowledge of the FBAR form or FBAR filing requirements.  *See* Pl. Resp. at 19 through 21.  Since Plaintiff never presents evidence of actual knowledge of the FBAR form or the FBAR filing obligations, there is no genuine issue as to any material fact regarding the Defendants' lack of actual knowledge, and Rule 56 of the Federal Rules of Civil Procedure authorizes this Court to grant judgment to Defendants as a matter of law.

Plaintiff's three-page Response next raises alternative legal theories for finding willfulness.[5]  However, in the three FBAR penalty cases cited by Plaintiff, where the defendant was found liable for a willful FBAR penalty, the court first found the defendant held <u>actual</u> knowledge of the FBAR filing obligation.  Plaintiff cites <u>no</u> case where there was a finding of willful FBAR violations where there was not first a finding that the defendant held <u>actual</u> knowledge of the FBAR requirement or the FBAR form.

The first case cited by Plaintiff is *United States v. Jon McBride*, 908 F.Supp.2d 1186 (2012).  This case was thoroughly briefed by Defendants in Defendants' Response to Plaintiff's

---

[5] Plaintiff refers to its arguments in its Memorandum in Support of Plaintiff's Motion for Summary Judgment. Defendants, in their Response to Plaintiff's Motion for Summary Judgment, have disputed every material fact relied upon by Plaintiff to support its contention that the alternative theories of constructive knowledge, willful blindness, and recklessness are inapplicable here.

Motion for Summary Judgment (at pgs. 40-43), and that analysis is incorporated here by reference.  To summarize Defendants' position, *McBride* is a case involving <u>actual</u> knowledge of FBAR filing obligations. The court found that McBride had <u>actual</u> knowledge of his FBAR filing obligations as a result of reading investment offering materials. *Id.* at 1205.  The court states, "As a result, McBride had <u>actual</u> knowledge of his duty to file an FBAR for any account in which he had a financial interest prior to filing his 2000 and 2001 tax returns." *Id.* at 1208 (emphasis added). The court pointed to the fact that McBride testified that the purpose of the tax avoidance scheme was to avoid disclosure on the FBAR. *Id.* at 1208-1209.  The Court concluded that, "McBride's claim that he did not know he had a legal duty to file FBARs is not credible." *Id.* at 1209.

The facts in McBride are easily distinguished as previously briefed by Defendants. Neither Peter Horowitz nor Susan Horowitz held <u>actual</u> knowledge of an FBAR or the FBAR filing obligations for the 2007 and 2008 years, and Plaintiff has <u>never</u> claimed they did. McBride's conduct is also distinguishable from Defendants' conduct.  Here, the UBS account was set up in 1994 to hold after tax income earned by Peter Horowitz, not to claim excess deductions to avoid paying taxes, through a purchased tax shelter.  The assets at UBS and Finter were invested in interest bearing certificates of deposit with a good faith understanding that the interest income was not taxable. There was no intent to avoid paying income on the principle placed into the account, as in *McBride*.  Here, the Defendants paid taxes on Peter Horowitz' earnings before the funds were deposited into the account.  Defendants did not lie to the IRS about the existence of the account or lie about their conduct to the IRS like McBride. Defendants came forward voluntarily through the IRS Voluntary Disclosure Program when they realized their error.  The Defendants voluntarily filed their FBARs for the prior years, and timely

17

filed their 2009 FBAR reporting their joint ownership in the Finter account. Further, the IRS Agent assigned to the Horowitz' FBAR examination testified that neither Peter Horowitz nor Susan Horowitz used means to hide the existence of the account by way of trusts, foundations, corporations, partnerships, nominees or IBCs to hold the UBS or Finter accounts. McBride used IBCs and nominee ownership to hide his interest in the assets. The UBS and Finter accounts were in personal name or names. The conduct exhibited by the defendant in *McBride* is not analogous in any way to the conduct of the Defendants. *McBride* is not applicable.

Plaintiff next cites *United States v. Williams*, 489 Fed. App'x 655 (4th Cir. 2012), where the defendant was found to be liable for willful FBAR penalties.[6] Similar to the defendant in *McBride*, and unlike the case at hand, Williams had <u>actual</u> knowledge of his obligation to file an FBAR and intentionally failed to file the form. This case was thoroughly briefed by Defendants in Defendants' Response to Plaintiff's Motion for Summary Judgment (pgs., 43-45), and that analysis is incorporated here by reference. Defendants' position is summarized below.

Williams opened two Swiss bank accounts. *Id.* at 656. From 1993 through 2000, Williams deposited untaxed income into the account and did not file FBARs for the account. *Ibid.* Further, Williams completed a tax organizer in January 2001, which had been provided to him by his accountant in connection with the preparation of his 2000 federal tax return. *Ibid.* In response to the question in the tax organizer regarding whether Williams had "an interest in or a signature or other authority over a bank account, or other financial account in a foreign country," Williams intentionally answered "No." *Id.* at 657.

---

[6] Plaintiff continues to cite the 4th Circuit Court's analysis and relies upon its conclusions in its Response, however, the second page of the 4th Circuits opinion indicates that it <u>cannot</u> be relied upon as precedent, accordingly this Court is not bound to follow either the analysis or conclusion of the 4th Circuit in *Williams II*, but instead may properly apply the willfulness analysis described above. *See* JE 71.

Williams pled guilty to a two-count superseding criminal information, and he allocuted to willfully hiding his income and willfully failing to file an FBAR.  Like McBride, Williams admitted he had <u>actual</u> knowledge of the FBAR filing obligations.  Like *McBride*, the court found the defendant's actual knowledge of the FBAR filing obligation was sufficient to uphold the voluntary violation of a known legal duty standard for willfulness.  Here, Plaintiff has <u>never</u> put forth any evidence that Peter Horowitz or Susan Horowitz had <u>actual</u> knowledge of the FBAR form or the FBAR filing obligation when the 2007 and 2008 FBARs were due to be filed. And, when they learned of the FBAR form and filing obligations, both Defendants timely filed their 2009 FBAR for their ownership in the Finter account.

*Williams* is further factually distinguishable.  Peter and Susan Horowitz did not receive a questionnaire regarding offshore accounts, lie about the existence of the accounts, deposit untaxed income into the account, or testify under oath that they had actual knowledge of the FBAR or FBAR reporting obligations.  Rather, the undisputed testimony established that, (i) neither Peter nor Susan Horowitz knew of the FBAR or FBAR reporting requirements, (ii) the account at UBS was established while the Defendants were living and working in Saudi Arabia, (iii) their accountant shipped tax returns year after year to Saudi Arabia and never questioned where their banking was held or that there may be FBAR filing obligations, and (iv) the Defendants lacked any knowledge that earnings on the account was reportable or that the income tax returns contained questions regarding offshore accounts. The case at hand involves an innocent mistake by the Defendants. None of these facts are analogous to *Williams*.

Lastly, Plaintiff cites *U.S. v. Garrity*, 2018 WL 1611387, *6 (D. Conn. Apr. 3, 2018) in support of its position.  This case involves the Estate of Paul Garrity, Sr. and the decedent's failure to file a personal FBAR form. The evidence presented at the jury trial involved the

19

decedent's <u>actual</u> knowledge of the FBAR filing obligation.  The government introduced into evidence a corporate FBAR form containing the decedent's signature to establish that, "Mr. Garrity signed an FBAR for Garrity Industries, Inc., which tends to show that Mr. Garrity and his accountant, Mr. Sterczala, knew of the FBAR requirement, which goes to the willfulness element." *See* Government's trial exhibit list, JE 70 at 24, 25, numbers 63, 64, and 65.[7]

## II.    Conclusion as to willfulness.

Plaintiff cites no case where willful FBAR penalty assessments were upheld, where there was not first a finding by the court that the defendant possessed <u>actual</u> knowledge of the FBAR form or FBAR reporting requirements.  The Defendants' burden here is simply to establish that no genuine issue remains for trial as to any material fact, even when the evidence is viewed in the light most favorable to the Plaintiff.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Since Plaintiff raises no claim that either Defendant possessed actual knowledge of the FBAR filing obligation or FBAR form, there is no material fact in dispute and the Court should grant Defendants' Motion for Summary Judgment.

---

[7] The balance of the cases cited by Plaintiff at Pl. Resp., 19-21, are not FBAR penalty cases, have been addressed in Defendant's Response to Plaintiff's Motion for Summary Judgment, and involve distinguishable facts. In *U.S. v. Poole*, 640 F.3d 114, 123 (4th Cir. 2011) (the defendant was found to have a subjective belief of a high probability of the existence of a tax liability when he prepared returns for a business owner that greatly underreported taxable income); *Sorenson v. U.S.*, 521 F.2d 325, 327 (9th Cir. 1975) (the taxpayer was held to have willfully failed to collect and pay withholding and FICA taxes on his cabinet making business, after the court found the taxpayer was paying the withholding tax, filing the necessary forms, and then unreasonably stopped submitting the forms and payment). *Global-Tech Appliances, Inc. v. SEB*, S.A., 563 U.S. 754, 770-71 (2011) (a patent infringement case where the inventor knew that the product he was seeking protection was sold overseas by another). *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 69-70 (2007) (the issue was whether Safeco disregarded the obligation to provide notice to consumers subject to an adverse action based on information contained in a consumer credit report under the Fair Credit Reporting Act and the court held that Safeco's reading of the statute was erroneous, but not objectively unreasonable); *Lefcourt v. United States*, 125 F.3d 79, 83 (2d Cir. 1997) (a law firm was held to have disregarded the requirement to report cash payments in the amount over $10,000 when it filed the appropriate form, but left out the payor's name).

DATED:  August 1, 2018          /s/ James N. Mastracchio
                                JAMES N. MASTRACCHIO
                                Bar No. 456779 (D.C.)

                                Eversheds Sutherland (US) LLP
                                700 Sixth Street NW, Suite 700
                                Washington, DC 20001
                                Telephone:  202-383-0210
                                Facsimile:  202-637-3593
                                Email:  JimMastracchio@eversheds-sutherland.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed electronically with the Court

on August 1, 2018.

                                /s/ James N. Mastracchio
                                JAMES N. MASTRACCHIO